MERCHANTS UNION TRUST COMPANY, Successor to THE UNION TRUST COMPANY, a corporation incorporated under the laws of the Commonwealth of Pennsylvania, Trustee named in a certain Indenture of Mortgage, dated the tenth day of June, A. D. 1905, executed by NEW PHILADELPHIA GRAPHITE COMPANY, a corporation of the State of New Jersey, and HIRAM C. HIMES, CHARLES L. REID and EDMUND B. SEYMOUR, Trustees for the bondholders of New Philadelphia Graphite Company under Deed of Trust dated the twelfth day of December, A. D. 1910,

*vs.*

NEW PHILADELPHIA GRAPHITE COMPANY, a defunct corporation of the State of New Jersey, KEYSTONE GRAPHITE COMPANY, a corporation of the State of Delaware, SARAH CORBIT CURTIS, Executrix under the last will and testament of FREDERICK WILLIAM CURTIS, deceased, FREDERICK D. CHESTER and CHESTER GRAPHITE COMPANY, a corporation of the State of Pennsylvania.

*New Castle, May 28, 1913.*

While amendments of a bill are frequently granted when the demurrer goes to matters of form only, or where there is some defect as to parties, when on demurrer to the whole bill it is dismissed on the merits for want of equity, the bill is out of court, and complainant will not be permitted to present an entirely different case by amendment.

In a bill by a mortgagee against the mortgagor's grantee and his lessees to recover rent and royalties stipulated for in the lease, allegations of the existence of a second mortgage, and that the record of the mortgages was notice to all the world, did not tend to show such privity between the grantee and its lessees and the mortgagee as entitled the mortgagee to the relief sought.

That a conveyance by a mortgagor was expressly made under and subject to the mortgages did not create such privity between the mortgagee and the grantee as entitled the mortgagee to maintain a suit against the grantee and its lessees to recover the rent and royalties stipulated for in the lease.

That part of the consideration for a conveyance by a mortgagor was the issuance by the grantee to the mortgagor's stockholders of preferred stock in the grantee corporation, that as a part of the same consideration the stockholders of the grantor surrendered their stock, receiving in lieu thereof stock in the grantee, and that the deed conveyed all the property of the grantor corporation which thereupon ceased to do business, did not create any such privity between the mortgagee and the grantee as entitled it to maintain a suit against the grantee and its lessees to recover the rent and royalties stipulated for in the lease.

In a bill by a mortgagee against the mortgagor's grantee and its lessees to recover rent and royalties stipulated for in the lease, allegations that it was the intention of the parties to the conveyance that the grantee should succeed to all the obligations and liabilities of the mortgagor, and that the grantee, having taken the property with notice of the mortgagee's estate or right, was liable to the same extent and in the same manner as the mortgagor, were mere conclusions.

In a bill by a mortgagee against the mortgagor's grantee and its lessees to recover rent and royalty stipulated for in the lease, allegations that the lease was executed with knowledge of the mortgagee's equities, and that by virtue of the lease the grantee surrendered possession of all of its property to the lessees, who thereby became bound for the fulfillment of the obligation in relation to the property by which the grantee was bound, were conclusions.

Knowledge on the part of lessees of the existence of a mortgage executed by their lessor's grantor, and that their lessor had no other property than that covered by the lease, did not render them liable to the mortgagee on their covenant to pay rent and certain royalties.

A demurrer to the bill of complaint was sustained, *ante* *p.* 18, 83 *Atl.* 520, and the solicitors for the complainants asked leave to file an amended bill of complaint. The cause was heard by the Chief Justice, owing to the disqualification of the Chancellor to hear and determine it, and the facts sufficiently appear in the opinion.

*Ward, Gray and Neary*, and with them *E. B. Seymour*, of the Philadelphia Bar, for the complainants.

*Horace G. Eastburn*, and with him *James C. Sellers*, of the Philadelphia Bar, for the defendants Sarah Corbit Curtis, Executrix of Frederick William Curtis, 'deceased, Frederick D. Chester and Chester Graphite Company.

Merchants Union Trust Co.*vs.* New Phila. Graphite Co. 157

Opinion.

The Chief Justice. The complainants ask leave to file an amended bill in the above stated case, in which a demurrer to the original bill was by a recent decision of this court sustained. The application is opposed on the ground that the demurrer covered every alleged ground of equity set forth in the bill, and for the further reason that, the opinion of the court having sustained the demurrer which covered the entire merits, the present application should be refused and the bill dismissed.

There can be no question about the rules which should govern courts of equity in proceedings of this character, and counsel differ not so much about the rules as their application to the present case.

It is not questioned that an amendment should be refused when the bill is wholly without equity; and that, when a demurrer to the whole bill is allowed, the bill is out of court, and no subsequent proceedings can be taken in the cause. The complainant will not be permitted to present an entirely different case by amendment. *McLeod v. Dell*, 9 *Fla.* 427; *Puterbaugh v. Elliott, et al.*, 22 *Ill.* 157; *Lyon & Brockway v. Tallmadge*, 1 *Johns Ch.* 184; *Fisher v. Walter*, 3 *C. P. Rep.* (*Pa.*) 161; 16 *Cyc.* 284; 1 *Daniel's Chancery Pleading & Practice* (*4th Ed.*) 597, 598; *Smith v. Barnes*, *Dick.* 67; *Watkins v. Bush*, *Dick.* 701; *Mitford & Tylers Pleading & Practice* 111, 309; *March v. Mayers*, 85 *Ill.* 177; *Bannon v. Comegys*, 69 *Md.* 411, 16 *Atl.* 129; *Jones v. Van Doren*, 130 *U. S.* 684.

In *Lyon & Brockway v. Tallmadge*, 1 *Johns Ch.* 184, the court said:

"Where a bill on demurrer is dismissed for want of equity on the merits of the case as stated, leave to amend the bill will not be granted."

The principles applicable to the present case are very clearly expressed in the case from which I have just quoted, and the following further quotation may be helpful and instructive, viz.:

"The motion for leave to amend the bill is not founded upon any specified omission or imperfection. The demurrer was decided upon the merits, and on the ground that the bill contained no equity. A general

leave to amend would be the same as leave to make a new bill, and I think the indulgence of amendments is not to be carried so far. If the bill be found defective in its prayer for relief, or in proper parties, or in the omission or mistake of some fact or circumstance connected with the substance of the case, but not forming the substance itself, the amendment is usually granted. But the substance of the bill must contain ground for relief. There must be equity in the case, when fully stated, and correctly applied to the proper parties, sufficient to warrant a decree. Here, as I have already observed, the substance of the bill is defective. The plaintiff gives a plain and candid statement of his case, and it cannot entitle him to relief, for the reasons assigned in pronouncing the decree. In the absence of authority I should deny this motion, because, as far as the doctrine of amendments can be reduced to general rules, or principle, it is against it. But there are cases which govern the present one. In *Napier v. Effingham*, 2 *P. Wms.* 401, Lord Chancellor King observed that there was not any precedent, in this court, of an amendment to a bill in a part wherein it has been dismissed upon the merits; and in a case before Lord Talbot, and which is cited by Mr. Cox in his notes to P. Williams (2 *P. Wms.* 300), the Chancellor observed that, after a demurrer to the whole bill allowed the bill was regularly out of court, and there was no instance of leave to amend it."

The complainants contend that the allowance of an amendment is always within the discretion of the court, and this is perhaps true as a general proposition. It is equally true, that in equity, as in law, such discretion when exercised should be sound and reasonable. The amendment should not be allowed if it presents an entirely different case from that set up by the bill demurred to, or if the bill was wholly without merit, or the court has clearly decided the merits of the case. Amendments are frequently granted when the demurrer goes to matters of form only, and when there is some defect as to parties, but not when the bill, on demurrer, is dismissed on the merits of the case for want of equity. Such propositions are not seriously questioned by the complainants, but it is insisted that the application before the court comes clearly within the principle declared in the case in 1 *Johns. Ch.* above referred to, viz:

"If the bill be found defective  *  *  *  in the omission or mistake of some fact or circumstance connected with the substance of the case, but not forming the substance itself, the amendment is usually granted."

It becomes necessary, therefore, to determine whether the present case comes within such principle or exception, and in order to do that, the proposed amendments should be examined. In considering this point it should be remembered that the fatal defect in the original bill consisted in the fact that there was no privity of contract or estate shown to exist between the complainants and the defendants, and it was mainly because of that fact the court sustained the demurrer. If the amended bill does not cure that defect, that is, show such privity as will sustain the action, or show a state of facts from which the liability of the defendants can be reasonably inferred, the application to amend should be refused.

The amendments proposed may be briefly, but substantially and sufficiently, stated as follows: The existence of a second mortgage executed by the New Philadelphia Graphite Company to the Union Trust Company, complainant, and that the record of the two mortgages constituted notice to all the world; that in the deed of the New Philadelphia Graphite Company conveying the equity in the properties to the Keystone Company the words, "under and subject nevertheless to the said mortgages," were used; that a part of the consideration for the conveyance was the issuance by the Keystone Company to the stockholders of the New Philadelphia Company of preferred stock in the first named company, and that at or about the same time, and as a part of the same consideration, the common stock of the Keystone Company was, at the instance of the New Philadelphia Company, issued in the name of Wells & Corbin, fiscal agents; that many of the stockholders of the New Philadelphia Company surrendered their stock for cancellation, having received in lieu thereof, one share of the stock of the Keystone Company for each ten shares of stock in the New Philadelphia Company; that the said deed conveyed all the property of the New Philadelphia Company to the Keystone Company and the first named company thereupon ceased to do business; that it was the intention of all the parties to the conveyance that the Keystone Company should succeed to all the liabilities and obligations of the New Philadelphia Graphite Company, under the two mortgages, and

that the Keystone Company, having taken the property. described in the conveyance with notice of the equitable estate, interest, claim, or right, of the complainants therein, is liable to the same extent and in the same manner to the complainants as was the New Philadelphia Graphite Company; that the said lease was executed by the parties thereto with full knowledge of all the equities existing between the Keystone Company and the New Philadelphia Company in favor of the Union Trust Company, the complainant, and that by virtue of said lease the Keystone Company surrendered the possession of all its property to Frederick William Curtis and Frederick D. Chester, the defendants, who thereby became bound for the fulfillment of the obligations in relation to said property by which their lessor, the Keystone Company, was bound at the date of the lease.

Considering these amendments in a general way, but in the order in which I have stated them, I say, the fact of the existence of a second mortgage, and the further fact that the record of the mortgages was notice to all the world, does not show, or tend to show, privity between the parties, or equity in the complainant's case, any more than was shown in the original bill.

In the opinion of the court sustaining the demurrer, one of the points carefully and fully considered was, whether the words in the conveyance, "under and subject nevertheless to the said mortgages," created such privity between the mortgagee and the assignee of the mortgagor, or such liability on the part of the assignee, as would sustain the action, and it was held that they did not. The question, therefore, having been decided in passing upon the demurrer cannot be again raised by way of amendment.

It is impossible to see what relevancy the issuance or surrender of stock can have to any question properly raised in the case. It is not a fact or circumstance which tends to prove privity between the parties, or liability on the part of the defendants. Neither am I able to see the materiality, or force, of the statement, that "the aforesaid conveyance conveyed all the property of the New Philadelphia Graphite Company to

the Keystone Company, and the first named company there-upon ceased to do business."

In respect to the amendment, that it was the intention of all the parties to the conveyance that the Keystone Company should succeed to all the obligations and liabilities of the New Philadelphia Company under the two mortgages; and to the further amendment, that the Keystone Company, having taken the property described in the conveyance with notice of the equitable estate, interest, claim, or right of the complain-ants therein, is liable to the same extent and in the same manner to the complainants as was the New Philadelphia Company, it is only necessary to say that they are conclusions unwar-ranted by the facts which were fully stated in the original bill and fully considered by the court in deciding the demurrer.

The same general comment may be made upon the two remaining amendments which state that the lease was exe-cuted by the parties thereto with full knowledge of all the equities between the Keystone Company and the New Phila-delphia Company in favor of the Union Trust Company, the complainant, and that by virtue of said lease the Keystone Company surrendered the possession of all its property to Frederick William Curtis and Frederick D. Chester, defend-ants, who thereby became bound for the fulfillment of the obligation in relation to said property, by which their lessor, the Keystone Company, was bound at the date of the lease. It may be also said that mere knowledge of the existence of the mortgage executed by the New Philadelphia Company, and of the fact that the Keystone Company, the lessor, had no other property than that covered by the lease, did not create any lia-bility on the part of the lessees, or furnish any ground for equitable relief, in favor of the complainants, or against the defendants—the lessees.

Speaking generally, it may be said that the complainants have not, by their amended bill, presented any new fact or cir-cumstance that would make a different case from that which the court has already decided after full argument, and espe-cially is this true with respect to Sarah Corbit Curtis, executrix of Frederick William Curtis, deceased, Frederick D. Chester

and Chester Graphite Company, the defendants, against whom relief is prayed for. So that, if it were assumed that a case entitling the complainants to equitable relief has been made by the amended bill against the Keystone Graphite Company, by facts and circumstances connected with the substance of the case, and which did not appear in the original bill, it certainly cannot be reasonably contended that such a case has been presented by the amended bill against the lessees, or their representatives. Every material fact and circumstance that could affect, or have any bearing, upon their liability to the complainants, which is stated in the amended bill was present in the original bill, and was both considered by the court and covered by its opinion in passing upon the demurrer.

The demurrer was decided upon the merits, and on the ground that the bill contained no equity. The substance of the bill must contain ground for relief; there must be equity in the case when fully stated. The original bill was held to be defective, and in my opinion the defect is not cured by the amendments. As was said by the Chancellor in *Brockway v. Tallmadge*, above referred to: "There can be no amendment to a bill in a part wherein it has been dismissed upon the merits. * * * After a demurrer to the whole bill is allowed, the bill is regularly out of court, and there is no instance of leave to amend it."

I am of the opinion that the application to file the amended bill should be refused, because the complainants have not by such amended bill, any more than by the original bill, stated a case which entitles them to the relief prayed for.*

*Note.—Upon refusal of the application to file an amended bill of complaint, a final decree was entered dismissing the original bill of complaint, from which an appeal was prayed and allowed. For the opinion on appeal see *post p.* 481.